**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| KENNETH SANDERS, | |
| Plaintiff, | |
| v. | Civil Action No. 8:11-cv-02153-AW |
| THE HARTFORD, | |
| Defendant. | |

## MEMORANDUM OPINION

Plaintiff Kenneth Sanders brings this action against Defendant Hartford Life and Accident Insurance Company. Plaintiff asserts claims under ERISA, 29 U.S.C. §§ 1001 *et seq.* Pending before the Court is Defendant's Motion to Dismiss. The Court has reviewed the record and deems no hearing necessary. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Except where otherwise indicated, the Court draws the following facts from Plaintiff's Amended Complaint and construes them in the most favorable to him. Plaintiff Kenneth Sanders (Sanders) is a Maryland resident who worked for EMC Corporation (EMC) for approximately nine years. Defendant Hartford Life and Accident Insurance Company (Hartford)  is a corporation and one of the nation's largest private insurance companies. Hartford issues a group insurance policy (Policy)[1] that funds an employee benefit plan (Plan) for EMC employees.

---

[1] The Court also draws the facts from the Policy, which is referred to in the Amended Complaint and integral to it.

The Plan provides long-term disability (LTD) benefits to participants pursuant to its terms. Under the Policy, participants who have a disability preventing them from performing the material and substantial duties of their occupations are eligible to receive LTD benefits for twenty-four months following the onset of the disability. In order to continue receiving benefits thereafter, participants must show that they cannot perform the material and substantial duties of any occupation. No matter the length or severity of the disability, participants with mental disorders may receive benefits under the Policy for a maximum of twenty-four months.

Sanders alleges that he injured his shoulder during his employment with EMC in August 2007. In January 2008, Sanders underwent surgery to repair his shoulder. Around this time, Hartford approved Sanders for short-term disability, which it extended through March 2008. Effective April 7, 2008, Hartford approved Sanders for LTD coverage.

On November 3, 2009, EMC sent Sanders a letter stating that he did not satisfy the Policy's LTD definitions and that LTD coverage would not extend past April 7, 2010 (i.e., the initial 24-month period discussed above). For this 24-month period, Hartford calculated Sanders's gross monthly LTD benefit at $5,333.33.

In January 2010, Plaintiff was diagnosed with lung disease, Sarcoidosis,[2] Post Traumatic Stress Disorder (PTSD), and depression. In April 2010, as planned, Sanders's LTD benefits were terminated. Despite the January 2010 diagnosis, it was concluded that Sanders suffered from only the mental disorder PTSD. Therefore, although Sanders's LTD benefits for his shoulder injury had been terminated, LTD benefits were extended for two years on account of PTSD.

Sanders alleges that Hartford should have determined him to be disabled on the basis of

---

[2] Merriam-Webster's Online Dictionary defines Sarcoidosis as "a chronic disease of unknown cause that is characterized by the formation of nodules especially in the lymph nodes, lungs, bones, and skin." *Sarcoidosis*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/sarcoidosis (last visited Sep. 19, 2012).

the physical disability Sarcoidosis, for which he would have been eligible for disability benefits past the initial, 24-month period. Although Sanders alleges that his doctors sent Hartford at least two letters stating that he had Sarcoidosis, Sanders does not allege that he pursued an administrative appeal with Hartford with respect to this decision.

In October/November 2010, Hartford reduced Sanders's LTD payment from $5,333.33 to $2,071.33. Hartford based this decision on language in the Policy. The Policy explicitly provides that participants' LTD monthly benefit is calculated by "[s]ubtract[ing] the Deductible Sources of Income from Your Gross LTD Monthly Benefit." Doc. No. 1, Ex.B, at 8. "Deductible Sources of Income" include"[d]isability benefits paid, payable, or for which there is a right under . . . [t]he Social Security Act." *Id.* at 9. The Policy also requires participants to "supply proof that You have applied for other Deductible Income Benefits such as . . . Social Security Disability benefits, when applicable." *Id.* at 17.  Sanders does not allege that he has ever applied for SSD benefits.

In 2011, Hartford started sending Sanders collection letters alleging that it had overpaid him in light of the lower offset amount of $ 2,071.33. Hartford contended that Sanders had to reimburse it for the months in which it paid him $5,333.33 because Sanders had a right to receive SSD during these months.

In mid-February 2011, Hartford stopped sending Sanders LTD payments to recoup the alleged overpayments. In the same month, Sanders appealed Hartford's decision to offset his LTD payment based on his estimated SSD payment. In denying Sanders's appeal, Hartford reasoned that it had overpaid Sanders when it was paying him the pre-offset amount of $5,333.33 and that it was entitled to recoup these overpayments.

Sanders alleges that he did not become eligible to receive SSD income until March 2010. Sanders thus concludes that, to the extent offset is proper, Hartford had a right to reimbursement for only the period of March 2010 to February 2011, when Hartford stopped making payments.

On August 3, 2011, Sanders filed a Complaint. Doc. No. 1. Although the Complaint is somewhat cryptic, and contains no formal counts, one can glean from it three theories of relief: (1) Hartford's decision to offset payments with SDD estimates was improper; (2) to the extent offset was proper, Hartford calculated it improperly; and (3) Hartford's decision to deny LTD benefits for the alleged physical disability of Sarcoidosis constituted an abuse of discretion.[3]

Hartford moved to dismiss Sanders's Complaint on October 19, 2011. Doc. No. 6. In response, Sanders filed a Motion for Leave to Amend. Doc. No. 11. Hartford challenged this Motion on futility grounds. On January 5, 2012, the Court issued an Order granting Sanders's Motion to Amend and denying as moot Hartford's Motion to Dismiss. Doc. No. 14.

On the same day, the Clerk registered Sanders's Amended Complaint. Doc. No. 15. The Amended Complaint is a near mirror image of the Complaint, relying on the same allegations and raising the same theories of relief.

On January 26, 2012, Hartford filed the instant Motion to Dismiss. Doc. No. 16. The Motion is ripe for the Court's resolution.

---

[3] Sanders also seems to assert in his Amended Complaint state law claims sounding in negligence and bad faith. Hartford argues in its Motion to Dismiss that, to the extent Sanders properly plead these claims, ERISA preempted them. In his reply, Sanders concedes that ERISA preempts his state law negligence and bad faith claims. Doc. No. 17 at 5–6. Insofar as Sanders attempts to assert these claims as separate ERISA claims, the Court dismisses them outright. The would-be ERISA negligence claim duplicates Sanders's other ERISA claims. The bad faith claim is not cognizable as the Amended Complaint is bereft of any allegations plausibly supporting the inference that Hartford acted in bad faith in denying Sanders's claims.

## II.      STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III.     LEGAL ANALYSIS

## A.      Whether Offset for Estimated SSD Benefits Was Proper

Under ERISA, a participant of an employee benefits plan may commence a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §

1132(a)(1), (B). "[T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When interpreting a plan, courts must pay due regard to its plain language. *See Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). Courts usually review a plan administrator's interpretation of a plan for an abuse of discretion. *See id.*

In this case, the Policy empowered Hartford to offset Sanders's LTD payments with SSD estimates. As set forth above, the Policy explicitly provides that participants' LTD monthly benefit is calculated by "[s]ubtract[ing] the Deductible Sources of Income from Your Gross LTD Monthly Benefit." "Deductible Sources of Income" include "[d]isability benefits paid, payable, or for which there is a right under . . . [t]he Social Security Act." The Policy also requires participants to "supply proof that You have applied for other Deductible Income Benefits such as . . . Social Security Disability benefits, when applicable."

Accordingly, the Policy's plain language authorized Hartford to subtract income to which Sanders had a right under the Social Security Act. Sanders concedes that he has a right to SSD, stating that he became eligible for such benefits in March 2010. Furthermore, it was appropriate for Hartford to estimate the amount of SSD because, inter alia, Sanders has not sought SSD payments. *See Grooman v. Northwest. Mut. Life Ins. Co.*, 200 F. Supp. 2d 523, 529–30 (D. Md. 2002). Moreover, several cases propose that social security offset provisions are generally enforceable. *See, e.g.*, *id.* These holdings harmonize with the policy that "employers have large leeway to design disability and other welfare plans as they see fit." *Black & Decker Disa. Plan v. Nord*, 538 U.S. 822, 823 (2003).

For these reasons, the Court grants Hartford's Motion to Dismiss as to Sanders's claim that offset for estimated SSD benefits was improper. This claim is not cognizable.

**B.      Whether Hartford Properly Calculated the Offset Amount**

Sanders asserts that, even if offset was permissible, Hartford had a right to reimbursement for only the period of March 2010 until February 2011. Construing the pleadings liberally, Sanders continues that Hartford has impermissibly withheld LTD payments for the period between February 2011 and April 2012 based on the incorrect belief that it is entitled to offset for LTD payments made in the 2008 to 2010 period. Sanders concludes that Hartford had no authority to offset estimated SSD payments from the pre-March 2010 LTD payments because he did not become eligible for SSD until March 2010.

This claim is cognizable. Sanders alleges that he was not eligible for SSD payments until March 2010. Hartford does not argue that this allegation is improperly pleaded. Nor does Hartford identify allegations failing to support the inference that Sanders was not eligible for SSD until this date. Instead, Hartford contends that Sanders failed to exhaust administrative remedies by not appealing this issue. However, the Amended Complaint states that Sanders appealed this issue to Hartford's administrative office. Doc. No. 15 ¶ 57. Furthermore, Hartford's own documents seem to show that Sanders appealed this issue. *See* Doc. No. 16-4. Accordingly, Sanders states a facially plausible claim that Hartford incorrectly calculated/applied the offset amount.

**C.      Whether Hartford's Decision to Deny LTD Benefits for the Alleged Physical Disability of Sarcoidosis Was Proper**

This claim is not cognizable. Sanders basically argues that Hartford abused its discretion by denying his claim that he was physically disabled within the meaning of the Policy. Sanders

concedes that he failed to pursue an administrative appeal with respect to this claim. *See* Doc. No. 17 at 5. It is well-settled that plan participants must exhaust administrative remedies before initiating an ERISA action, which includes administratively appealing denied claims. *See, e.g.*, *White v. Sun Life Assur. Co. of Can.*, 488 F.3d 240, 247 (4th Cir. 2007) (collecting cases).

Sanders makes an unsupported, conclusory argument that appeal would be futile. Sanders's legal conclusions, however, fail to support the inference that appealing the denial of this claim would be futile. Sanders premises this assertion on the assumption that Hartford will deny this claim on appeal because it has already denied it. Crediting this argument would make administrative appeal procedures dead letters. This outcome would be incompatible with ERISA's text, implementing regulations, and applicable case law. *See id.*; *see also* 29 C.F.R. § 2560.503-1.

For these reasons, the Court grants Hartford's Motion to Dismiss as to the argument that Sanders failed to exhaust administrative remedies on his claim that Hartford improperly determined that he was not physically disabled.

## IV.    CONCLUSION

In light of the preceding analysis, the Court **GRANTS IN PART AND DENIES IN PART** Hartford's Motion to Dismiss. A separate Order follows. The Court will issue a Scheduling Order.

| | |
|---|---|
| September 20, 2012 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |