IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| KENNETH SANDERS, <br><br> Plaintiff, <br><br> v. <br><br> THE HARTFORD, <br><br> Defendant. | Civil Action No. 8:11-cv-02153-AW |

**MEMORANDUM OPINION**

Plaintiff Kenneth Sanders brings this action against Defendant Hartford Life and Accident Insurance Company. Plaintiff asserts claims under ERISA, 29 U.S.C. §§ 1001 *et seq.* Defendant asserts a counterclaim for a constructive trust and/or equitable lien for overpaid disability benefits. Three motions are pending before the Court: (1) Plaintiff's Motion for Summary Judgment; (2) Defendant's Cross-Motion for Summary Judgment; and (3) Defendant's Motion to Strike. The Court has reviewed the record and deems no hearing necessary. For the reasons that follow, the Court **GRANTS IN PART** Defendant's Cross-Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment, and **DENIES AS MOOT** Defendant's Motion to Strike.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Kenneth Sanders (Plaintiff) worked for EMC Corporation (EMC). Defendant Hartford Life and Accident Insurance Company (Hartford) is a private insurance company. Hartford issues a group insurance policy (Policy) that funds an employee benefit plan for EMC employees.

1

The Policy provides long-term disability (LTD) benefits of 66 $^2/_3$ % of monthly earnings to participants subject to certain terms. *See* Doc No. 39-1 at 50. Under the Policy, participants who have a disability preventing them from performing the material and substantial duties of their occupations are eligible to receive LTD benefits for twenty-four months following the onset of the disability. In order to continue receiving benefits thereafter, participants must show that they cannot perform the material and substantial duties of any occupation. No matter the length or severity of the disability, participants with mental disorders may receive benefits under the Policy for a maximum of twenty-four months.

The Policy further provides that participants' LTD monthly benefit is "subject to reduction by deductible sources of income or *Disability Earnings*." *Id.* Likewise, the Policy states that the LTD monthly benefit is calculated by "[s]ubtract[ing] the Deductible Sources of Income from Your Gross LTD Monthly Benefit." *Id.* at 55. "Deductible Sources of Income" include "[d]isability benefits paid, payable, or for which there is a right under . . . [t]he Social Security Act." *Id.* at 56. The Policy also requires participants to "supply proof that You have applied for other Deductible Income Benefits such as . . . Social Security Disability benefits . . . ." *Id.* at 64.

Plaintiff injured his shoulder during his employment with EMC. In January 2008, Defendant approved Plaintiff for short-term disability. In March 2008, Plaintiff applied for LTD benefits. In applying for LTD benefits, Plaintiff acknowledged as follows:

> If I receive disability benefits greater than those which should have been paid, I understand that I will be required to provide a lump sum repayment to the insurance company. The insurance company has the option to reduce or eliminate

future disability payments in order to recover any overpayment balance that is not reimbursed.

Doc. No. 39-6 at 95. In April 2008, Defendant approved Plaintiff for LTD benefits. Doc. No. 39-6 at 64. The letter of approval states that Plaintiff would need to supply "proof of [his] application for SSD benefits" should his disability be extended. *Id.* at 66. Similarly, the letter states that becoming entitled to receive Deductible Sources of Income may have an effect on Plaintiff's benefits. *Id.* at 66.

Plaintiff continued to claim that he was unable to work and Defendant continued to provide him with LTD benefits. In April 2009, Plaintiff again certified that he understood that he would be required to provide a lump sum repayment if Defendant gave him disability benefits greater than those that Defendant should have paid him and that Defendant could reduce or eliminate future disability payments to recover any overpayments. *See* Doc. No. 39-5 at 95. On the same date, Plaintiff represented that he was not receiving and did not expect to receive other income. *See id.* at 96. In June 2009, Plaintiff once more (1) acknowledged that he was obligated to reimburse Defendant for any overpayment of benefits and (2) failed to provide information regarding any other sources or potential sources of income. *See id.* at 86–90.

In November 2009, Defendant informed Plaintiff that it had determined that Plaintiff was not eligible for LTD beyond April 2010. Doc. No. 39-4 at 45. Defendant wrote Plaintiff in January 2010 to remind him of the same. Nevertheless, the Parties continued to share documents. Eventually, in June 2010, Defendant notified Plaintiff that he qualified for LTD benefits after April 2010 based on his having been diagnosed with PTSD. *See* Doc. No. 39-5 at 55. Defendant further informed Plaintiff that, due to the nature of his PTSD, it would not pay him benefits past April 2012. Doc. No. 39-4 at 22. Plaintiff also claimed that he was disabled due to a lung

3

condition known as sarcoidosis.[1] Defendant denied his claim for disability based on this condition. Doc. No. 39-4. Plaintiff does not allege, and the administrative record does not reflect, that Plaintiff pursued an appeal of this decision.

In October 2010, Defendant once again requested Plaintiff to provide information regarding his SSD application status. *Id.* at 6. Defendant warned Plaintiff that it would reduce his benefit by an estimated SSD award if Plaintiff failed to provide the requested information by November 3, 2010. *Id.* at 7. Plaintiff failed to respond. On or around November 12, 2010, using the Social Security Administration's online benefit calculator, Defendant estimated Plaintiff's primary and dependent benefits. *See* Doc. No. 39-2 at 70–71; Doc. No. 39-5 at 4–5. The online calculator estimated Plaintiff's monthly benefit as $2,117 and Plaintiff's dependent's monthly benefit as $1,596. Apparently on the same day, Defendant reduced Plaintiff's dependent's estimated monthly benefit to $1,058. Doc. No. 39-2 at 98. On or around this time, Defendant began reducing Plaintiff's LTD award to $2,071 or $2,158.33.

Although the exact amount of Plaintiff's original LTD award is not conclusively clear, the record reflects that Defendant reduced Plaintiff's LTD award by $3,175, the sum of Plaintiff's estimated monthly benefit ($2,117) and Plaintiff's dependent's monthly benefit ($1,058). Some evidence suggests that Plaintiff's original monthly benefit was $5,333.33, and that Defendant subtracted from this amount the sum of Plaintiff's estimated monthly benefit ($2,117) and Plaintiff's dependent's monthly benefit ($1,058), for an adjusted monthly award of $2,158.33. *See* Doc. No. 39-3 at 85, 87. Other evidence indicates that Plaintiff's original monthly benefit was $5,246, and that Defendant similarly subtracted from this amount the sum of

---

[1] Merriam-Webster's Online Dictionary defines Sarcoidosis as "a chronic disease of unknown cause that is characterized by the formation of nodules especially in the lymph nodes, lungs, bones, and skin." *Sarcoidosis*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/sarcoidosis (last visited July 25, 2013).

4

Plaintiff's estimated monthly benefit ($2,117) and Plaintiff's dependent's monthly benefit ($1,058), for an adjusted monthly award of $2,071. Doc. No. 39-2 at 81; Doc. No. 39-4 at 98.

In March 2011, Defendant evidently stopped paying Plaintiff his reduced monthly LTD benefit of $2,071 or $2,158.33. On the same date, Defendant sent Plaintiff a letter and corresponding chart explaining the basis for its decision to suspend his reduced LTD payment. Doc. No. 39-3 at 84–87. The chart states that Plaintiff would have first been eligible for SSD in July 2008[2] and starts the calculation of overpayments on this date. *Id.* at 87. The chart concludes the overpayment calculation period on November 2010, the date on which Defendant began reducing Plaintiff's LTD payments to $2,071 or $2,158.33. For this 28-month period, Defendant calculated Plaintiff's overpayment as $88,770.33. This amount represents the product of twenty-eight months and the estimated overpayment amount of $3,175 ($88,900), less a minor credit irrelevant here. *See id.*

As indicated, to recoup the $88,770.33 amount, Defendant started withholding Plaintiff's entire reduced monthly LTD benefit in March 2011. As of May 2013, Defendant declares that it has withheld $55,986.91 in monthly LTD payments. Doc. No. 45-3. The quotient of the withheld amount and the 26-month period between March 2011 and May 2013, $2,153.34, is roughly equal to the $2,158.33 reduced LTD payment that Defendant asserts that it has withheld since March 2011. Defendant further declares that, as of May 2013, Plaintiff still owes $32,783.42 in overpayments. It is unclear whether Defendant has continued to withhold Plaintiff's reduced LTD payments after May 2013.

On August 2011, Plaintiff filed a Complaint for violations of ERISA. Defendant moved to dismiss. Doc. No. 6. On January 15, 2012, Plaintiff filed an Amended Complaint. Doc. No.

---

[2] Although Plaintiff was injured in January 2008, Defendant asserts that it calculated Plaintiff as starting to receive benefits in July 2008 in light of the dictates of the Social Security Act. *Cf.* 42 U.S.C. § 423(a), (c)(2) (generally imposing a five-month waiting period on the receipt of disability benefits).

15. Defendant moved to dismiss anew. Doc. No. 16. On September 21, 2012, the Court issued a Memorandum Opinion and Order (Opinion) granting in part and denying in part Defendant's Motion to Dismiss. Doc. Nos. 19, 20. The Court dismissed Plaintiff's claim that Defendant lacked the right to estimate his SSD benefit and thereby offset his monthly LTD payment. The Court also dismissed Plaintiff's claim that Defendant's decision to deny his claim for LTD benefits based on sarcoidosis was improper. The Court held, however, that Plaintiff stated a facially plausible claim that Defendant incorrectly calculated the offset amount.

After discovery, Plaintiff filed a Motion for Summary Judgment. Doc. No. 42. Plaintiff's Motion is insufficient to support the grant of summary judgment. Defendant cross-moved for summary judgment, Doc. No. 45, arguing that it (1) properly calculated Plaintiff's estimated SSD benefit and (2) properly reduced, and subsequently withheld, Plaintiff's LTD payments. Defendant further argues that it is entitled to judgment on its counterclaim for a constructive trust and/or equitable lien in the amount of $32,783.42, the alleged amount of overpaid LTD benefits. Defendant also filed a Motion to Strike, Doc. No. 44, contending that Plaintiff improperly relied on documents outside of the administrative record to support his Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come

forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III. LEGAL ANALYSIS

#### A. Defendant's Cross-Motion for Summary Judgment

Under ERISA, a participant of an employee benefits plan may commence a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1), (B). "[T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When interpreting a plan, courts must pay due regard to its plain language. *See Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 342 (4th Cir.

2000). Courts usually review a plan administrator's interpretation of a plan for an abuse of discretion. *See id.*; *see also Conkright v. Frommert*, 130 S. Ct. 1640, 1644 (2010) (citation omitted) ("[A]n ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion."). In the context of ERISA, the abuse-of-discretion standard "equates to reasonableness." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008). "[A]n administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.* (citation and internal quotation marks omitted).

In this case, Defendant's calculation of Plaintiff's estimated SSD benefit and efforts to recoup overpaid LTD payments are reasonable and supported by substantial evidence. The Policy explicitly empowers Defendant to offset Plaintiff's LTD payments with SSD estimates and requires Plaintiff to supply proof that he has applied for SSD benefits. Defendant repeatedly requested Plaintiff to submit documentation showing that he had applied for SSD and warned him that the failure to do so would result in its offsetting his LTD payments with SSD estimates. Indeed, Plaintiff represented that he was not receiving SSD benefits. Subsequently, Defendant used a SSA tool to estimate Plaintiff's monthly benefit ($2,117) and Plaintiff's dependent's monthly benefit ($1,596). Plaintiff does not dispute that the information Defendant used to estimate his SSD benefits was correct or that he does not have a dependent. Although the amount that the SSA tool returned for Plaintiff's dependent's monthly benefit ($1,596) is higher than the amount by which Defendant offset Plaintiff's LTD benefit ($1,058), the reduction of this amount actually benefits Plaintiff. Furthermore, although Plaintiff suggests that he was not disabled under federal law for the period for which Defendant offset his LTD payments, Plaintiff provides no meaningful evidence or argumentation to support this assertion. In fact, Plaintiff seems to

concede that the definition of long-term disability under the Policy is similar to the relevant definition under the SSA, which runs counter to the notion that he was not eligible for federal assistance. *Cf. Sloan v. Hartford Life and Acc. Ins. Co.*, 475 F.3d 999, 1005 (8th Cir. 2007) ("A social security disability determination is generally admissible evidence to support an ERISA claim for long-term disability benefits."). Accordingly, Defendant's estimation that Plaintiff was entitled to $3,175 in SSD benefits was reasonable and supported by substantial evidence.

Defendant's calculation of the overpayment amount and method used to recoup the overpaid benefits are also reasonable and supported by substantial evidence. Defendant reasonably determined Plaintiff to be eligible for SSD as of July 2008 and properly cut off the overpayment period at November 2010, the date on which Defendant started offsetting Plaintiff's LTD payment. Deliberately and in accordance with sound principles, Defendant calculated the total overpayment amount as $88,770.33. To recoup this amount, Defendant later suspended Plaintiff's reduced monthly LTD benefit. And, as of May 2013, Defendant was still $32,783.42 in arrears. Granted, there is some uncertainty as to the exact amount of Plaintiff's original LTD award ($5,333 or $5,246) and reduced LTD award ($2,158.33 or $2,071). However, the evidence overwhelmingly supports the conclusion that Defendant (1) had a right to offset Plaintiff's monthly LTD payments by $3,175, (2) properly calculated the amount of overpayment as $88,770.33, and (3) withheld only $55,986.91 in LTD payments. Therefore, even if the slight uncertainty surrounding the original and reduced LTD payments could change the past-due amount of $32,783.42, this amount is minor and certainly does not alter the fact that Plaintiff still owes Defendant on the order of $32,000.

Accordingly, the Court will enter partial judgment on Defendant's counterclaim for a constructive trust and/or equitable lien in an undetermined amount and entertain short

supplemental briefing on whether the $32,783.42 amount needs to be adjusted slightly based on the uncertainty regarding the precise amount of the original and reduced LTD payments. *Cf.* 29 U.S.C. § 1132(a), (3) (empowering plan fiduciaries to commence civil actions to "obtain other appropriate equitable relief . . . ."); *Bowling v. PBG Long-Term Disability Plan*, 584 F. Supp. 2d 797, 813 (D. Md. 2008) (citing cases) ("[Section 1132(a)(3)] permits a claim for recovery of overpayments made by a plan to a beneficiary.").

**B.      Plaintiff's Motion for Summary Judgment**

The Court denies Plaintiff's Motion for Summary Judgment for the reasons stated in Part III.A.

**C.      Defendant's Motion to Strike**

"In the context of ERISA, . . . the district court conduct[s] . . . reviews based solely on the existing administrative record . . . ." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 631–32 (4th Cir. 2010). Here, Plaintiff attaches some documents to his Motion for Summary Judgment that are outside of the administrative record. All the same, the Court denies Defendant's Motion to Strike as moot as it did not rely on these documents to Defendant's detriment.

**D.      Other**

As indicated, the Court directs the Parties to file short supplemental briefs regarding whether the $32,783.42 overpayment amount needs to be adjusted slightly based on the minor uncertainty regarding the precise amount of the original and reduced LTD payments. As prevailing party, Defendant shall file a supplemental brief not to exceed ten pages on the question at issue within fourteen days of the entry of this Opinion and Order. Plaintiff may file a response not to exceed ten pages within fourteen days of the filing of Defendant's supplemental

brief. Defendant may file a reply not to exceed five pages within fourteen days of Plaintiff's filing of any response.[3]

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's Cross-Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment, and **DENIES AS MOOT** Defendant's Motion to Strike. A separate Order follows.

|  |  |
| --- | --- |
| July 30, 2013 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |

---

[3] In lieu of filing briefs, the Parties of course may file a joint stipulation with respect to any revised or agreed-upon amount of judgment on Plaintiff's counterclaim.